The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRIENDS OF THE EAST LAKE SAMMAMISH TRAIL, CASCADE LAND CONSERVANCY, ROBERT W. & BENTE K. PASKO,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAMMAMISH,<br><br>Defendant, and<br><br>EAST LAKE SAMMAMISH COMMUNITY ASSOCIATION,<br><br>Intervenor-Defendant | No. CV03-2793C<br><br>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR:<br>May 21, 2004 |

## I.   INTRODUCTION AND RELIEF REQUESTED

Plaintiffs Friends of the East Lake Sammamish Trail, Cascade Land Conservancy, and Robert W. & Bente K. Pasko move for a summary judgment determination that the federal railbanking statute, 16 U.S.C. 1247(d), and the Surface Transportation Board Order of September 18, 1998 (authorizing King County to develop a rail trail on an inactive railroad right of way adjoining Lake Sammamish) preempt Interim Sammamish Development Code ("ISDC") § 21A.24.070(2)(a) and the identical Sammamish Municipal Code ("SMC")

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 1

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

21A.50.070(2)(a), as applied to a railroad right of way designated for interim trail use under the federal railbanking program.[1] The Sammamish code provisions each declare that the City of Sammamish ("the City") may issue a permit required for development of a trail on a railbanked right of way only if the City finds that "there is no practical alternative to the proposed development" with less impact on "sensitive areas." Reduced to its essence, Friends' contention is that Congress and the U.S. Surface Transportation Board ("STB") designated the East Lake Sammamish right of way for development of a recreational trail, and that it is beyond the power of the City to prohibit development of a trail on the right of way, or to require King County to satisfy City criteria to secure the right to develop a trail on the right of way. The Friends fully support those provisions of the Sammamish ordinances that require King County to mitigate the impact of the Trail on sensitive areas, so long as the "mitigation" does not preclude construction of the Trail on the railbanked right of way.

## II. STATEMENT OF FACTS

### A. Plaintiffs

The Friends of the East Lake Sammamish Trail is a nonprofit corporation dedicated to development of the East Lake Sammamish Trail ("the Trail"). Members include people who live near the proposed Trail, in Sammamish, and in the general region. Friends members use and enjoy King County's extensive trail system and wish to use the Trail for recreational and commuting purposes as soon as possible. Declaration of Bente K. Pasko In Support of Plaintiffs' Motion For Summary Judgment ¶ 3.

The Cascade Land Conservancy ("CLC") is a non-profit organization that purchased the East Lake Sammamish railroad right-of-way from the Burlington Northern Santa Fe

---

[1] When King County applied for a Public Agency Utility Exception the Sammamish sensitive areas ordinance was codified in Interim Sammamish Development Code ch. 21A.24. In 2003 the City recodified the sensitive areas ordinance in the new Sammamish Municipal Code ch. 21A.50. The text of the ordinance at issue in this case was moved without change from ISDC 21A.24.070 to SMC 21A.50.070.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 2

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

Railway Company ("BNSF") in 1997. CLC applied to the STB to "railbank" the corridor, and managed the right of way for more than a year during which time it incurred expenses and advanced the trail project in administrative, legal and policy proceedings. Its members use and enjoy the region's recreational trails, and seek to use the Trail as soon as possible. In addition CLC holds a contractual right to recover ownership of any segment of the rail corridor that King County does not include in the Trail. Declaration of Eugene Duvernoy In Support of Plaintiffs' Motion For Summary Judgment ¶¶ 3-4.

Bob and Bente Pasko are residents of Sammamish, members of the Friends, and support development of the East Lake Sammamish Trail on the railbanked right of way. The Paskos and their children seek to use the Trail as soon as possible for recreation and as a safe route for bicycle commuting. The Sammamish PAUE rules have harmed the Paskos by delaying and by threatening to frustrate development of the Trail on the railbanked right of way. Pasko Dec. ¶ 2.

**B.     The East Lake Sammamish Trail**

In the late 1880s the Seattle Lake Shore & Eastern Railroad built a rail line from Issaquah north along the east shore of Lake Sammamish to Woodinville. The line, known as the Issaquah spur, eventually became part of the BNSF system. Until 1996 BNSF ran freight trains twice a week to Issaquah along the spur. The right of way, which varies from 50 to 200 feet wide, traverses parts of Redmond, Sammamish and Issaquah. Approximately 7.2 miles of the corridor lie within the City of Sammamish. City of Sammamish Hearing Examiner Decision No. PUE01-001 ("the PAUE Decision"), Finding of Fact No. 5, Ex. A to Pasko Declaration.

In planning documents going back as far as 1971, King County identified the East Lake Sammamish rail corridor as a future recreational trail to be developed if and when BNSF suspended railroad use. *Id.*, Finding of Fact No. 11. CLC purchased the corridor from BNSF in 1997 and commenced STB proceedings to railbank the right of way. *Id.*, Finding of Fact No. 8. The STB issued its Notice of Interim Trail Use in September 1998. *The Burlington*

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 3

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

*Northern and Santa Fe Railway Company – Abandonment Exemption – In King County, WA.*, STB Docket No. AB-6 (Sub. No. 380X) (September 16, 1998) ("the NITU Decision"), Ex. 1 to Declaration of Darwin Roberts In Support of Plaintiffs' Motion For Summary Judgment ("Roberts Dec."). The NITU Decision provides in relevant part that "If an agreement for interim trail use/railbanking is reached by the 180th day after service of this decision and notice, interim trail use may be implemented." *Id.*

In 1998 CLC transferred 10.9 miles of the railbanked right of way to King County for development of the East Lake Sammamish Trail. PAUE Decision, Finding of Fact No. 8. On December 15, 2000 the King County Council unanimously adopted an ordinance and appropriated funds for development of a soft surface trail on the railbanked East Lake Sammamish right of way. *Id.*, Finding of Fact No. 13.

King County then applied to the cities of Issaquah, Redmond and Sammamish for land use permits to construct a gravel trail on the existing crushed rock surface of the rail corridor. Tiny parts of the old rail line classified as "wetland" and "wetland buffer" under ISDC ch. 21A.24. The City sensitive areas ordinance allowed trails in wetland buffers only upon adoption of an administrative rule that the Sammamish City Council neglected to adopt. PAUE Decision, Findings of Fact Nos. 21 – 23. As a result King County was forced to apply for a Public Agency Utility Exception ("PAUE") under ISDC 21A.24.070:

> 21A.24.070 Exceptions. A. If the application of this chapter would prohibit a development proposal by a public agency and utility, the agency or utility may apply for an exception pursuant to this subsection:
>
> 1. The public agency shall apply to the Department and shall make available to the Department other related project documents such as permit applications to other agencies, special studies and SEPA documents.
>
> 2. The Department shall review the application based on the following criteria:
> **a. there is no practical alternative to the proposed development with less impact on the sensitive area;** and
> b. the proposal minimizes the impact on sensitive areas. (emphasis added)

King County applied for a PAUE on April 13, 2001. *Id.*, Finding of Fact No. 26. The PAUE, issued April 12, 2002, authorized King County to pour a new gravel surface on the

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 4

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

railbed, and required King County to offset and mitigate the loss of wetland buffer by preserving and enhancing other wetland areas within the old railroad right of way. *Id.*, Finding of Fact No. 27.

The East Lake Sammamish Community Association ("ELSCA"), a coalition of property owners who own land adjacent to the rail corridor, filed an administrative appeal of the PAUE. ELSCA contended that ISDC 21A.24.070 forbids the issuance of a PAUE for development of a recreational trail on the railbanked right of way, because there are "practical alternatives" to location of the trail that involve less impact to "sensitive areas" such as wetlands. ELSCA argued that King County had a "practical alternative," that it could have avoided "sensitive areas" by carving a new route for the trail along the shoulder of the East Lake Sammamish Parkway, a heavily traveled highway running roughly parallel to the railroad corridor some distance away. *Id.* at pages 32-33.

The City appointed a *pro tem* hearing examiner to conduct the appeal. The hearing examiner's decision, issued on April 24, 2003, concluded that there were "practical alternatives" to construction of the East Lake Sammamish Trail on the railbanked right of way, and that ISDC 21A.24.070 therefore forbids issuance of the PAUE. *Id.*, Conclusion of Law A.4 (at page 42). The hearing examiner reversed the City's decision and denied the PAUE. *Id.* at 53.

King County and ELSCA each appealed the PAUE decision to the Snohomish County Superior Court. On March 16, 2004 the Hon. Larry McKeeman reversed certain elements of the PAUE decision and remanded the case to the City for further proceedings. *King County v. City of Sammamish*, Mem.Dec. at 16, Ex. 2 to Roberts Dec.

The PAUE for which King County applied three years ago would authorize only construction of a soft surface trail on the East Lake Sammamish rail corridor. The County currently is conducting master planning for a permanent paved trail to replace the interim trail, the preferred location for which is on the railroad right of way. PAUE Decision, Finding of Fact No. 27; *Citizens For Safe and Legal Trails v. King County*, 2003 WL 22172793

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 5

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

(Wn.App. 2003) at 1, Ex. 3 to Roberts Dec. Should the County apply to build the permanent trail on the rail corridor, all parties to this litigation agree that the permanent trail will require another PAUE from the City of Sammamish. First Amended Complaint ¶ 5.8; City of Sammamish's First Amended Answer To First Amended Complaint ¶ 5.8; ELSCA Answer In Intervention ¶ 5.8.

As of April 2004 the soft surface East Lake Sammamish Trail is completed and open to the public in Redmond, Issaquah and unincorporated King County. The middle seven miles through Sammamish remain closed, with no foreseeable date for completion. Pasko Declaration ¶ 4.

## III. STATEMENT OF ISSUE

Do ISDC 21A.24.070(b)(i) and SMC 21A.50.070(b)(i) violate Art. VI, clause 2 of the U.S. Constitution by prohibiting the development of a recreational trail on an inactive railroad right of way designated for trail use under the federal railbanking program, unless the trail manager can show that there is "no practical alternative" to development of the trail on the railbanked right of way?

## IV. LEGAL ARGUMENT

### A. Summary Judgment Standard

A plaintiff is entitled to summary judgment "if there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### B. Overview of Federal Preemption

Article VI of the United States Constitution directs that the laws of the United States "shall be the supreme Law of the Land; … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. *See also McCulloch v. Maryland*, 4 Wheat. 316, 427, 4 L. Ed. 579 (1819) ("It is of the very essence of supremacy, to remove all

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 6

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments"). The Ninth Circuit recently summarized the three types of preemption as follows:

> Federal law may preempt state law in three ways: (1) federal law may explicitly preempt state law in a given area; (2) federal law may implicitly preempt state law by dominating regulation in a given area; or (3) state law may actually conflict with federal law.

*Young v. Coloma-Agaran*, 340 F.3d 1053, 1055 (9th Cir. 2003), *citing Barber v. State of Hawaii*, 42 F.3d 1185, 1189 (9th Cir. 1994). In this case plaintiffs contend that the "no practical alternative" requirement in the Sammamish sensitive areas ordinance conflicts with §1247(d), in that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Young, supra*, 340 F.3d at 1056, *quoting Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483 (1995).

**C.   Federal Regulation of Railroads Is Pervasive, And Preempts Contrary State Law.**

Federal regulation of railroads "has been recognized as 'among the most pervasive and comprehensive of federal regulatory schemes.'" *City of Auburn v. United States Government*, 154 F.3d 1025, 1029 (9th Cir. 1998) (quoting *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981)). Federal railroad regulation preempts state land use and environmental regulation of railroad operations. In *City of Auburn*, the Ninth Circuit barred the application of City land use permitting requirements to a proposal to reestablish rail service over Stampede Pass. 154 F.3d at 1031. In *Norfolk Southern Railway Co. v. City of Austell*, 1997 U.S. Dist LEXIS 17236 (N.D.Ga. 1997), Ex. 4 to Roberts Dec, the court held that federal railroad regulation preempted the application of a Georgia city's zoning law to the construction of an intermodal facility. In *Citizens For Safe and Legal Trails v. King County*, No. C98-1756Z (Feb. 17, 1999), Ex. 5 to Roberts Dec., Judge Zilly held that federal railroad regulation preempted the application of King County environmental regulations to the removal of the track and ties from the East Lake Sammamish rail corridor.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 7

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

**D.  Railbanked rights of way remain subject to the full gamut of federal railroad regulation.**

In response to the drastic shrinkage of the national rail transportation system during the middle decades of the 20th century, Congress in 1983 amended the National Trails Systems Act to create a program nicknamed "railbanking." The railbanking statute, 16 U.S.C. § 1247(d), Ex. 6 to Roberts Dec., authorizes state and local governments to acquire railroad corridors proposed for abandonment for interim use as recreational trails, subject to future reactivation for railroad use should the need arise. The statute operates by expressly preempting state law. Under common law property rights rules railroad easements terminate upon abandonment of rail service. Section 1247(d) preserves the corridor intact by declaring that if a state or local government agrees with a railroad to assume responsibility for the management of an inactive right of way, "such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." *Id.*

In response to a railroad's notice of intent to abandon service, a state or local government or qualified private organization may file a "Statement of Willingness To Assume Financial Responsibility" with the STB. 49 CFR 1152.29(a). If the railroad agrees to consider railbanking the STB issues a Notice of Interim Trail Use ("NITU"), stating that railbanking is authorized for the corridor at issue. § 1152.29(c). A railbanked corridor remains part of the national rail transportation system subject to the jurisdiction of the STB. *Good v. Skagit County*, 17 P.3d. 1216, 1219 (Wn.App. 2001). A trail manager must seek STB approval to terminate trail use, § 1152.29(d)(2), and a rail carrier must apply to vacate a NITU and resume rail service. § 1152.29(d)(3).

**E.  Congress determined that every inactive railroad right of way is appropriate for trail use.**

Congress had two goals in enacting 16 U.S.C. § 1247(d): to encourage the development of recreational trails and to preserve established railroad rights of way for future transportation use. *Preseault v. I.C.C.*, 494 U.S. 1, 17-18, 110 S.Ct. 914, 925 (1990). Courts

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 8

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

and the STB have stated repeatedly that Congress regarded *every inactive rail corridor* as fit for trail use. "[T]he decision whether a corridor is suitable for use as a public recreational trail as part of the national trails system has been made by Congress. In the Trails Act, Congress determined that all rail lines that are abandoned are potentially suitable for trail use and left the precise configuration of the trail use to the parties' voluntary agreement." *Citizens Against Rails-To-Trails v. Surface Transportation Board*, 267 F.3d 1144, 1153 (D.C.Cir. 2001). "Congress apparently believed that every line is a potentially valuable asset that merits preservation even if no future rail use for it is currently foreseeable." *Preseault*, 494 U.S. at 19, 110 S.Ct. at 926. *See also Citizens For Safe and Legal Trails v. King County*, Ex. 3 to Roberts Dec. at 5-6. In that case another of the organizations representing local opponents of the East Lake Sammamish Trail challenged a King County EIS for framing the project objective as opening the interim trail on the railroad right of way. Citizens argued that the County should have described the project "in more general terms that do not presuppose locating the trail on the railbed." *Id.* at 5. The Court of Appeals replied:

> The impetus for the trail project was the federal 'Rails to Trails' program. The program presupposes the objective of locating recreational trails on abandoned railbeds. The project was not, as Citizens seem to suggest, a general proposal to place a recreational trail somewhere around Lake Sammamish. The project was specifically intended to convert the railbed King County's property into a recreational trail. We conclude the County's stated objective did not violate SEPA regulations.

*Id.* at 5-6.

In implementing the railbanking program, the STB also recognizes that Congress intended to promote trail use on every railbanked right of way:

> Our role and responsibilities under the Trails Act are quite limited. We do not decide whether rail banking and use of the right of way as a recreational trail is desirable for a particular line of railroad; **Congress has itself made that determination (for all lines) in Section 1247(d).**

*Idaho Northern & Pacific Railroad Company – Abandonment and Discontinuance Exemption – In Washington and Adams Counties ID.*, 1998 WL 146208 at 8 (emphasis

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 9

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

added), Ex. 7 to Roberts Dec., *quoting Iowa Southern R. Co. – Exemption – Abandonment*, 5 I.C.C. 2d 496, 505 (1989). The *Idaho Northern* decision also states:

> Requiring the proponent of a trail to provide detailed financial information or to pass a fitness test before the Board issues a trail condition could deter or delay interim trail use, **which would be contrary to Congress' intent to facilitate and encourage rail banking and interim trail use on lines that otherwise would be abandoned.**

1998 WL 146208 at 6 (emphasis added). *Accord, Union Pacific Railroad – Abandonment and Discontinuance of Operations -- In Canyon and Ada Counties, Idaho(Stoddard Branch)*, 1995 WL 61495 at 6 (1995), Ex. 8 to Roberts Dec.

Judicial and STB decisions confirm that federal law protects the right of state and local governments to develop a trail on any railbanked right of way.

**F.    The STB authorized King County to develop a trail on the East Lake Sammamish right of way.**

The 1998 NITU Decision, Ex. 1 to Roberts Dec., was the culmination of a long and contentious proceeding at the STB. After rejecting an attempt by trail opponents to seize the right of way for operation of a "virtual railroad," *id.* at 1, the STB entered an order declaring in part that "interim trail use may be implemented" over a 12.45 mile line of railroad that included the section of the right of way that traverses Sammamish. *Id.* at 2.

**G.    State and local land use regulations apply to trail projects, but only to the extent that they do not frustrate development of a trail on a railbanked right of way.**

Given the preemptive sweep of federal railroad regulation and the declaration in § 1247(d) that railbanked rights of way "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes," the STB could have asserted blanket preemption of state and local regulation of rail trails. It has not taken that course. To the contrary, the STB has declared in numerous decisions that state and local governments have the right "to impose appropriate safety, land use, and zoning regulation on recreational trails." *Iowa Southern Railroad Company—Exemption—Abandonment in Pottawattamie, Mills, Fremont and Page Counties, IA*, 5 I.C.C.2d 496, 505, 1989 WL 239065 at 5 (1989), Ex. 9 to Roberts Dec.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 10

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

The authority of state and local government to apply land use restrictions to a railbanked corridor does not encompass the power to prevent trail use of a corridor. In rare circumstances local governments have attempted to use their land use authority to preclude development of a trail. While the STB has never confronted this problem, one federal court has. In *Blendu v. Friends of the Weiser River Trail, Inc.*, Civ. No. 98-0311-S-BLW, Mem. Dec. June 10, 1999 (D. Idaho), Ex. 10 to Roberts Dec., trail opponents sought to enjoin trail use of a railbanked right of way on grounds that recreational use of the corridor was inconsistent with a county zoning ordinance. *Id.* at 3. The Friends group countered that the STB's NITU order preempts the application of the zoning ordinance to prevent trail use. *Id.* at 8. The Court acknowledged the STB's deference to state and local land use rules, subject to some limits:

> In reconciling the federal case law with the STB decision, the Court is persuaded that Congress has given the power to control economic, environmental and virtually every other aspect of railroads and their corridors to the STB. The STB has, on the other hand, clearly indicated its intention to cede back to states and local governments the right to impose zoning and safety regulations on the trails so long as those regulations do not interfere with (1) the railroad's right to convert the corridor back into a railway at some point in the future and (2) the trail manager's right and ability to maintain the right-of-way as a recreational trail in the interim.
>
> * * *
>
> To the extent that the Complaint may be characterized as an attempt to prohibit Friends' use of the right of way because of a failure to comply with state and local zoning ordinances, such a claim must be dismissed because it is preempted by the railbanking statute and the STB's approval of Friends' operation of the corridor as a recreational trail under that statute.

Mem Dec. at 11 and 13, Ex. 10 to Roberts Dec.

To the best of plaintiffs' knowledge, *Blendu* is the only opinion by any state or federal court or agency that squarely decides the question presented by this case. Defendants may contend that the Snohomish County Superior Court in *King County v. City of Sammamish*, Nos. 03-2-07311-1 and 03-09687-1 (Mem. Dec. March 16, 2004), Ex. 2 to Roberts Dec., held that § 1247(d) does not preempt the application of the Sammamish ordinances to the

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 11

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

development of the East Lake Sammamish Trail. Plaintiffs were not parties to the *King County* action. The Court's holding, however, is that King County was barred from raising the preemption argument because it had not raised the issue before a City hearing examiner. Mem.Dec. at 6. Judge McKeeman went on, however, to offer as dicta his view that "The Trails Act doesn't require that trails be built in inactive railways, but, rather *encourages* the establishment of *appropriate* trails." *Id.* at 7 (emphasis in the original). From this premise he concluded that "there is no real conflict, because compliance with land use provisions may help develop appropriate trails." *Id.*

Judge McKeeman's views on preemption deserve no deference here, for several reasons. First, they are pure dicta. The Court's holding was that King County was barred from raising the issue. Second, no party shared with the Court the caselaw summarized above.[2] The preemption issue was an afterthought to King County, and Sammamish did not brief it at all. Third, because the issue was not well briefed Judge McKeeman's opinion badly misconstrues the law. Plaintiffs have no idea how Judge McKeeman concluded that § 1247(d) promotes only "appropriate" trails, but the statute itself contains no such limitation. Finally, while Supremacy Clause claims are cognizable in state as well as federal court, federal courts exist in part to protect the sovereign power of the United States, and federal courts reserve the right to exercise their independent judgment when faced with state court decisions that appear to undermine important federal interests. *See, e.g., Midgett v. United States*, 603 F.2d 835, 845 (Ct. Claims 1979). For all of these reasons, the Snohomish decision is neither on point nor persuasive authority in this case.

**H.   The Sammamish ordinances frustrate the purposes of the railbanking program, and of the STB's NITU order.**

The test of whether a local ordinance violates the Supremacy Clause is whether the ordinance stands as an obstacle to realization of the objectives of Congress. *Young, supra,*

---

[2] Among other omissions no party mentioned the *Blendu* decision in briefing the preemption issue to Judge McKeeman.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 12

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

340 F.3d at 1056. One of Congress's two objectives in enacting § 1247(d) was to make inactive railroad rights of way available for use as recreational trails. *Preseault*, 494 U.S. at 17; *Citizens-Against-Rail Trails*, 267 F.3d at 1153. The STB's 1998 NITU Order implemented that objective by authorizing interim trail use on the East Lake Sammamish right of way. Ex. 1 to Roberts Dec. at 2.

ISDC § 21A.24.070(2)(a) and SMC 21A.50.070(2)(a) frustrate the purpose of the federal railbanking program by prohibiting construction of a trail on a railbanked corridor unless the trail manager (King County) demonstrates that "There is no practical alternative to the proposed development with less impact on the sensitive area;" In 2001 King County applied for the PAUE required by ISDC 21A.24.070(2)(a). In 2002 the City issued the PAUE. In 2003 a Sammamish hearing examiner overturned the PAUE, on grounds that there are practical alternatives to location of the trail on the rail corridor. PAUE Decision, Conclusion of Law A.4, Ex. A to Pasko Declaration. In 2004 this decision was overturned by Judge McKeeman, and remanded for reconsideration by the hearing examiner. Mem. Dec. at 16, Ex. 2 to Roberts Dec.

So far King County has spent four years and untold thousands of dollars seeking an exemption from the City to build the trail authorized in the STB NITU decision.[3] Another evidentiary hearing will be required before the City decides whether there is any "practical alternative" to building the trail on the rail corridor. Assuming that the City finally issues a PAUE for the current project, King County will need to secure another PAUE to build a permanent paved trail on the rail corridor. First Amended Complaint ¶ 5.8; City of Sammamish First Amended Answer To First Amended Complaint ¶ 5.8; ELSCA Answer In Intervention ¶ 5.8. Meanwhile plaintiffs find themselves barred from the use and enjoyment of the publicly owned right of way that the STB designated for trail use in 1998.

---

[3] King County first applied for a PAUE in 2001, but many months of discussions with City planners over how to satisfy the Sammamish sensitive areas ordinance preceded the actual filing date.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 13

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

Plaintiffs' challenge is not based on any assumption about the ultimate resolution of the PAUE appeal. The Supremacy Clause prohibits the City of Sammamish from requiring interim trail managers to apply for a discretionary exemption to build a trail in the location that Congress and the STB designated for trail use:

> The hardship is the process itself. Process costs money. If a federal licensee must spend years attempting to satisfy an elaborate, shifting array of state procedural requirements, then he must borrow a fortune to pay lawyers, economists, accountants, archaeologists, historians, engineers, recreational consultants, environmental consultants, biologists and others, with no revenue, no near-term prospect of revenue, and no certainty that there ever will be revenue. Meanwhile, politics, laws, interest rates, construction costs, and costs of alternatives change. **Undue process may impose cost and uncertainty sufficient to thwart the federal determination that a power project should proceed.**

*Sayles Hydro Associates v. Maughan*, 985 F.2d 451, 454 (9th Cir. 1993) (emphasis added).

In *NE Hub Partners v. GNG Transmission Corp.*, 239 F.3d 333 (3rd Cir. 2001) the developer of a natural gas storage facility sought to enjoin Pennsylvania environmental permitting proceedings for a facility licensed by FERC. In deciding that the case was ripe for federal court review the Third Circuit observed that "the state regulatory process itself can be the preempted burden." 239 F.3d at 344. "Even where a field has not been occupied to the exclusion of state regulation, certain state regulatory acts clearly would conflict with federal law, and it is as logical to preempt state process concerning such matters as state actions in occupied fields." *Id.* at 347. "We therefore hold that state regulatory process may be preempted by conflict with federal law, as well as by field occupation." *Id.* at 348.

In *Freehold Cogeneration Assoc. L.P. v. Board of Regulatory Commissioners*, 44 F.3d 1178 (3rd Cir. 1995) an independent power producer sought to enjoin New Jersey utility ratemaking proceedings as preempted by federal law. The Third Circuit again enjoined the state process: "The interest that Freehold seeks to vindicate in this proceeding is the right to be free from 'state laws . . . respecting the rates of . . . electric utilities'" and from the expense, delay and uncertainty inherent in the administration of such laws." 44 F.3d at 1189. The

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 14

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

Court held that the federal statute preempted the New Jersey regulatory proceedings, and remanded for entry of summary judgment. *Id.* at 1194.

The conflict between the Sammamish ordinances and the federal railbanking program could not be simpler. Congress enacted § 1247(d) to authorize trail use on any inactive rail corridor, provided only that a state or local government steps forward to assume responsibility for management of the corridor and the railroad consents to the arrangement. *Idaho Northern, supra*, Ex. 7 to Roberts Dec. at 6. The 1998 NITU order authorized King County to implement trail use on the corridor at issue here. Sammamish may not prohibit trail development on the railbanked corridor, nor may it require the trail manager to prove that there is "no practical alternative" in order to secure City permits to develop a trail. "The Supreme Court has held that principles of implied conflict preemption serve to nullify state law that 'under the circumstances of th[e] particular case . . . stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress – whether that 'obstacle' goes by the name of conflicting; contrary to; . . . repugnance; difference; irreconcilability; inconsistency; violation; curtailment; interference or the like." *Kimmel v. Dowelanco*, 275 F.3d 1199, 1203 (9th Cir. 2001), *quoting Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 873, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).

V. **CONCLUSION**

This case is ripe for summary judgment because the few facts material to the motion are undisputed. King County owns and seeks to develop the federally railbanked East Lake Sammamish right of way. The Sammamish sensitive areas ordinance has delayed and may frustrate King County's plans by prohibiting trail use of the corridor unless King County can show that there is "no practical alternative" to location of the trail on the corridor designated by the STB for interim trail use. The "no practical alternative" clause in the Sammamish

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 15

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

ordinance is preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Young, supra*, 340 F.3d at 1056.[4]

Plaintiffs ask the Court to hold that 16 U.S.C. 1247(d) and the 1998 STB order preempt the process required by ISDC § 21A.24.070(2)(a) and SMC 21A.50.070(2)(a). Plaintiffs also respectfully request that the Court rule on this motion as soon as possible. The Superior Court in *King County v. City of Sammamish*, Ex. 2 to Roberts Dec., remanded the PAUE Decision to the City because the Court disagreed with the hearing examiner's interpretation of the "no practical alternative" standard in the City ordinance. The County, the City and ELSCA are now obliged to prepare for another evidentiary hearing to resolve the issues framed by Judge McKeeman's decision. Should this Court concur with plaintiffs that federal law preempts that part of the Sammamish ordinance, a prompt decision will spare the parties from the cost and delay inherent in another evidentiary hearing. Not coincidentally, an early decision also would speed the day when plaintiffs and the broader public can enjoy a walk on the East Lake Sammamish Trail.

---

[4] Plaintiffs do not challenge those portions of the Sammamish sensitive areas ordinance that require King County to "minimize the impact on sensitive areas." The PAUE permit issued by the City required the County to replace every square inch of wetland and wetland buffer disturbed by the trail.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 16

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

Respectfully submitted this 29 day of April, 2004.

                    HELLER EHRMAN WHITE & McAULIFFE

By: *Matthew Cohen* (signature)
Matthew Cohen, WSBA #11232
Darwin P. Roberts, WSBA # 32539

WASHINGTON FOREST LAW CENTER

By: *Peter Goldman* (signature)
Peter Goldman, WSBA # 14789

Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 17

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

# CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Bruce Laurence Disend**
  bruce@kenyondisend.com

- **Peter J. Eglick**
  eglick@helsell.com

- **Michael P. Witek**
  mwitek@helsell.com

- **Peter R. Goldman**
  PGoldman@wflc.org,

- **Darwin P. Roberts**
  droberts@hewm.com

- **Matthew Cohen**
  mcohen@hewm.com, sedocketing@hewm.com

DATED this 29th day of April, 2004.

s/ Matthew Cohen
Matthew Cohen, WSBA # 11232
Attorney for Plaintiffs
Heller Ehrman White & McAuliffe, LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7098
Tel: (206) 389-6024
Fax: (206) 515-8966
e-mail: mcohen@hewm.com

SE 552724 v2
4/29/04 4:26 PM (95255.0001)

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT:
CV03-2793C - 18

Heller Ehrman White & McAuliffe LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900